

# In the Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| DEBORAH A. WALKER, | ) | |
| Respondent, | ) | |
| v. | ) | WD77805 |
| | ) | |
| JACK J. LONSINGER, | ) | FILED: May 26, 2015 |
| Appellant. | ) | |

## APPEAL FROM THE CIRCUIT COURT OF CLAY COUNTY
### THE HONORABLE DAVID P. CHAMBERLAIN, JUDGE

### BEFORE DIVISION TWO: LISA WHITE HARDWICK, PRESIDING JUDGE,
### VICTOR C. HOWARD AND CYNTHIA L. MARTIN, JUDGES

Jack Lonsinger ("Husband") appeals from the circuit court's judgment denying his motion for contempt against his former wife, Deborah Walker ("Wife"), and granting her petition in equity to allocate, as an omitted marital debt, all of the parties' 2011 tax liability to Husband. For reasons explained herein, the judgment is affirmed in part and reversed in part.

### FACTUAL AND PROCEDURAL HISTORY

Husband and Wife were married in 1981. When they separated in 2009, Wife filed a petition for dissolution of marriage. In 2011, while the dissolution was pending, Husband took distributions of approximately $80,000 from some of his

IRA accounts without Wife's knowledge. Husband used the funds to invest in a business venture to which Wife was not a party. Although Husband disclosed his investment in the business venture to Wife in interrogatory responses, he said only that the funds for the investment came from his trust, which consisted of bank accounts, CDs, money markets, stock, and IRA accounts. Husband did not disclose to Wife that he withdrew the funds specifically from the IRA accounts in his trust.

In early 2012, the financial institutions that maintained Husband's IRA accounts issued 1099-R forms to him identifying the gross distribution amount of each of his 2011 IRA distributions. Thereafter, in April 2012, the parties prepared and filed joint 2011 federal and state tax returns. Although Husband was aware that his IRA distributions were taxable, neither the federal nor state tax returns included those IRA distributions. Without reporting Husband's IRA distributions, the joint 2011 federal tax return indicated that the parties were entitled to a refund of $319,000.

On August 6, 2012, Husband and Wife entered into a marital settlement agreement. In the agreement, the parties agreed that they would "equally share any 2011 tax liability or refund" without reference to a specific amount. The agreement also contained a section titled "Full Disclosure," which included this clause:

> 2. Each party warrants that he or she has fully advised the other of the full extent of all income, liabilities, and assets in which she or he had any interest, whether legal or equitable, from the filing

of the Petition for Dissolution of marriage to the date of the execution of this Agreement as well as all other facts relating to the subject matter of this Agreement.

Husband did not disclose his 2011 IRA distributions or the resulting tax consequences in the marital settlement agreement. Wife relied on Husband's representations that he had disclosed all of his assets and debts when she agreed to the division of the parties' assets and liabilities set out in the marital settlement agreement.

The judgment dissolving the parties' marriage was entered on August 21, 2012. By agreement of the parties, the judgment incorporated the terms of their marital settlement agreement. At no time prior to the entry of the dissolution judgment did Husband disclose to Wife his 2011 IRA distributions or his receipt of the corresponding 1099-R forms.

In November 2012, the IRS issued Husband and Wife a notice of deficiency resulting from Husband's undisclosed IRA distributions. The notice of deficiency was the first notice Wife received of the 2011 IRA distributions. In response to the notice of deficiency, the parties' accountant prepared amended joint 2011 tax returns to include the IRA distributions. The amended federal tax return indicated that the parties owed $26,670,[1] while the amended state tax return indicated that the parties owed $4572.

---

[1] Husband's reply brief indicates that the $26,670 owed on the amended federal return was the amount that the parties were overpaid when they received their $319,000 refund.

3

Upon completion of the amended tax returns, Husband demanded that Wife sign the amended returns and pay half of the resulting tax liability. Wife signed the amended returns but refused to pay anything due to Husband's failure to disclose his IRA distributions in the marriage settlement agreement or at any time before the parties' divorce. Additionally, Wife refused to pay because Husband was the sole beneficiary of the IRA distributions.

Husband paid the federal tax liability and then filed a motion for civil contempt against Wife in September 2013. The motion requested the court to find Wife in contempt of the dissolution judgment for refusing to pay half of the 2011 tax liability. In response, Wife filed a petition in equity in which she asked the court to determine that the 2011 tax liability constituted a marital debt that was omitted from the dissolution judgment. She requested that the court order Husband to be solely responsible for paying this debt due to his failure to disclose his IRA distributions and the resulting tax liability in the dissolution action. Wife also requested payment of her attorney's fees. The court consolidated Husband's motion and Wife's petition for trial.

Following the trial, the court entered its judgment denying Husband's contempt motion and granting Wife's petition in equity. In its judgment, the court found that Husband had knowledge of his 2011 IRA distributions and their taxability before the execution of the marital settlement agreement and the entry of the dissolution judgment, and that Husband bore the burden to disclose the distributions to Wife. The court further found that, while Husband's failure to

4

disclose the distributions did not constitute fraud, it was a mistake. Therefore, the court ruled that Husband was solely liable for the 2011 tax liability, as well as any interest and penalties associated with that liability. Additionally, the court ordered Husband to pay Wife's attorney's fees in the amount of $9000. Husband appeals.

## STANDARD OF REVIEW

Appellate review of this court-tried case is under the standard of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Accordingly, we will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id*. We defer to the court's determinations regarding witness credibility, and we view the evidence and any inferences therefrom in the light most favorable to the judgment. *May v. O'Roark*, 329 S.W.3d 410, 413 (Mo. App. 2011).

## ANALYSIS

In his sole point on appeal, Husband contends the circuit court erred in granting Wife's petition in equity, awarding her attorney's fees, and denying his motion for contempt because the court's ruling amounted to an improper modification of the dissolution judgment. Specifically, Husband argues that, because it was more than one year from the date of the judgment, the only way that the court could relieve Wife of her obligation under the dissolution judgment to pay one-half of the 2011 tax liability would be if it found extrinsic fraud. Because the court specifically found no fraud, Husband contends the court could not modify the dissolution judgment.

5

Under Section 452.360.2, RSMo 2000, the distribution of marital property in a dissolution judgment is final and is not subject to modification. "'When the terms of a parties' separation agreement are incorporated into a dissolution decree, the court does not retain the power to modify them.'" *Meissner v. Schnettgoecke*, 211 S.W.3d 157, 160 (Mo. App. 2007). Within one year after the judgment is entered, however, Rule 74.06 allows the circuit court to set aside the judgment based on a finding of mistake, inadvertence, surprise, excusable neglect, intrinsic or extrinsic fraud, misrepresentation, misconduct of an adverse party, or an irregularity in the judgment. Rule 74.06(b) and (c); *Reimer v. Hayes*, 365 S.W.3d 280, 283 (Mo. App. 2012). Wife filed her petition in equity in October 2013, more than one year after the August 2012 entry of the dissolution judgment. "'After one year from the date of the judgment, the judgment is subject to attack only by an independent action in equity upon a demonstration of extrinsic fraud when the basis of relief is fraud.'"*Reimer*, 365 S.W.3d at 283 (citation omitted). *See also* Rule 74.06(d). In its judgment, the court specifically found that there was no fraud; hence, it did not grant Wife's petition in equity under Rule 74.06(d).[2]

Instead, the court granted Wife's petition in equity on the basis that the 2011 tax liability constituted marital debt that was omitted by mistake from the division of property in the dissolution judgment. "Marital property, omitted from a dissolution decree which has become final, may be divided in a subsequent

---

[2] In her petition in equity, Wife alleged that Husband's failure to disclose his IRA distributions and the resulting tax liability was either a mistake or fraud. At trial, however, Wife testified that she was not contending that Husband committed fraud.

6

independent action in equity if the decree was obtained by extrinsic fraud, accident or mistake." *West v. West*, 871 S.W.2d 64, 65 (Mo. App. 1994) (citing *Chrun v. Chrun*, 751 S.W.2d 752, 755 (Mo. banc 1988)). This same rule applies to allow for the division of marital debt that was omitted from a final dissolution judgment. *Milligan v. Helmstetter*, 15 S.W.3d 15, 26 (Mo. App. 2000).

The marital debt that the court purported to divide in this case -- the parties' 2011 tax liability -- was not omitted from the dissolution judgment. In fact, it was specifically addressed, as the marital settlement agreement that was incorporated in the dissolution judgment provided, "The parties will equally share any 2011 tax liability or refund." It is true that, at the time the parties executed the agreement and the court entered the dissolution judgment, the parties had already received or believed they would receive a $319,000 refund. Nevertheless, instead of limiting their agreement to address only the division of the tax refund claimed in their 2011 tax return, Husband and Wife elected also to provide for the division of any tax liability, should one occur.

In its judgment, the court found that only Husband had knowledge of his 2011 IRA distributions and their taxability and that he mistakenly failed to disclose those distributions and their taxability to Wife. Although these findings established that the cause of the 2011 tax liability (Husband's IRA distributions) was omitted from the dissolution proceeding, they did not establish that the 2011 tax liability itself was omitted.It was not omitted, as Husband and Wife expressly

contemplated how to divide such liability when they agreed to "equally share *any* 2011 tax liability."  (Emphasis added.)

While a party can seek the distribution of a marital asset or debt that was omitted from the dissolution judgment, the party "cannot seek the redistribution of property covered by the decree."  *In re Marriage of Quintard*, 691 S.W.2d 950, 953-54 (Mo. App. 1985); *Meissner*, 211 S.W.3d at 160.  Wife's petition in equity asking the court to hold Husband solely responsible for the parties' 2011 tax liability did not seek to divide omitted marital debt; rather, it sought to redistribute debt covered by the dissolution judgment.  The circuit court erroneously applied the law in granting her petition.  Therefore, the portion of the judgment granting Wife's petition in equity and awarding her attorney's fees is reversed.

Husband also argues that the court erred in denying his contempt motion because he made a prima facie case to find Wife in contempt of the dissolution judgment, and Wife failed to rebut it.  The circuit court's judgment in a civil contempt proceeding will not be disturbed absent a clear abuse of discretion.  *Ream-Nelson v. Nelson*, 333 S.W.3d 22, 28 (Mo. App. 2010).  An abuse of discretion occurs when the ruling "'is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.'"  *Id*. (citation omitted).

To establish a prima facie case for civil contempt, a party must prove "(1) the contemnor's obligation to perform an action as required by the decree; and (2) the contemnor's failure to meet the obligation."*Id*.  "'The alleged contemnor then

8

has the burden of proving that person's failure to act was not due to her own intentional and contumacious conduct.'"*Id.* (quoting *Walters v. Walters*, 181 S.W.3d 135, 138 (Mo. App. 2010)). "Whether or not [the contemnor]'s conduct was intentional and contumacious is a fact-driven inquiry." *Basham v. Williams*, 239 S.W.3d 717, 727 (Mo. App. 2007).

In this case, it is clear that the circuit court did not believe that Wife acted in a contumacious manner by refusing to pay one-half of the parties' 2011 tax liability. The court found that Husband's investment in the business venture during the parties' separation placed an "undue burden" on Wife to try to track the source of funds (his IRA distributions) for that investment. The court also found that Husband not only "had superior knowledge regarding the IRA distributions," but that he was the "only" party with knowledge of them. Additionally, the court found that Husband had the 1099-R forms for his IRA distributions when the marital settlement agreement was executed and the dissolution judgment was entered. The court noted that, in the marital settlement agreement, Husband and Wife each warranted that they had "fully advised the other of the full extent of all income, liabilities, and assets in which he or she had any interest," from the date of the filing of the dissolution petition to the date of the execution of the settlement agreement, "as well as all other facts relating to the subject matter of this [a]greement." The court found that, although Husband bore the burden to disclose his IRA distributions to Wife, he failed to do so.

9

Based upon these findings, we cannot conclude that the court's decision was clearly against the logic of the circumstances then before it and was so arbitrary and unreasonable as to shock our sense of justice and indicate a lack of careful consideration. The circuit court did not abuse its discretion in denying Husband's request to find Wife in contempt of the dissolution judgment. Therefore, the portion of the judgment denying Husband's contempt motion is affirmed.

## CONCLUSION

The portion of the judgment granting Wife's petition in equity and awarding her attorney's fees is reversed. The portion of the judgment denying Husband's contempt motion is affirmed. Wife's request for attorney's fees on appeal is denied.

LISA WHITE HARDWICK, JUDGE

ALL CONCUR.

10