Christopher KLEE, Appellant,

v.

MISSOURI COMMISSION ON
HUMAN RIGHTS, et al.,
Respondent.

WD79758

Missouri Court of Appeals,
Western District.

April 25, 2017

Jelani A. Logan, St. Louis, MO, for appellant.

Bart A. Matanic, Jefferon City, MO, for respondent.

Before Division Four: Mark D. Pfeiffer, Chief Judge, Presiding, Lisa White Hardwick, Judge and Gary D. Witt, Judge.

Gary D. Witt, Judge

Appellant Christopher Klee ("Klee") appeals from the judgment of the Circuit Court of Cole County denying his petition for judicial review of a non-contested case pursuant to section 536.150.[1] Klee had filed a complaint under the Missouri Human Rights Act ("MHRA") with the Respondent the Missouri Human Rights Commission ("MHRC") claiming unlawful discrimination in his conditions of employment with the Southeast Missouri Mental Health Center ("SMMHC"). The MHRC dismissed Klee's complaint for lack of jurisdiction. Klee filed this action with the circuit court, seeking review of the MHRC's dismissal of his complaint. The circuit court found that Klee was not protected by the MHRA as he was not an employee of SMMHC. Klee now raises two points on appeal challenging the circuit court's judgment. We reverse and remand.

## Factual Background

Klee was admitted as a patient of SMMHC on November 29, 2010, after pleading not guilty by reasons of mental disease or defect under section 552.040, and was diagnosed by his treating psychiatrist with pedophilia, non-exclusive type. SMMHC is a part of the Missouri Department of Mental Health, a state agency. Klee resides at and receives services from SMMHC.

On March 9, 2011, Klee began to perform part-time work for SMMHC. Klee primarily worked as a dishwasher, but has also worked to help build a greenhouse and grow food. For the years 2011 through 2013, Klee received compensation from SMMHC for his work in the form of wages. He is currently paid $7.71 per hour and has never been paid less than minimum wage. In 2011, Klee earned $1,762.70. He had elected on his W-4, the Employee's Withholding Allowance Certificate, to have $50 withheld from every paycheck. In 2012, Klee earned $4,729.41 in wages and on his W-4 elected to have $100 withheld from every paycheck. In 2013, Klee earned $4,321.25 in wages and on his W-4 elected to have $200 withheld from every paycheck. For each of these years, Klee's W-2 form listed Klee as an employee and the State of Missouri as his employer.

On March 19, 2013, Klee was told by his psychiatrist Dr. Veera Reddy ("Dr. Reddy") that he had to file a second W-4 form with a decrease in deductions or else he would be terminated from his job. Pursuant to a state regulation, SMMHC was able to automatically deduct from Klee's paycheck a certain percentage of his wages for reimbursement of his care. SMMHC felt that Klee was "gaming the system" by taking too large a withholding from his check, thereby depriving the State of Mis-

---

1. All statutory citations are to RSMo 2000 as updated through the December 31, 2016 cumulative supplement, unless otherwise indicated.

souri of the compensation to which it was entitled. Klee did as he was instructed and filed a new W-4 form.

On August 26, 2013, Klee filed a charge of discrimination based on his disability with the MHRC. The MHRC provided to Klee on April 24, 2014 a Notice of Termination of Proceedings in which it made an administrative finding that it lacked jurisdiction over the claim because there was no employer-employee relationship between Klee and SMMHC.

Pursuant to section 536.150, Klee filed his Petition for Administrative Review of the MHRC's decision with the Circuit Court of Cole County, which was subsequently amended. A hearing on the matter was held before the circuit court at which evidence was presented.

The evidence at the hearing established that Klee has been seeing his psychiatrist, Dr. Reddy, at SMMHC for approximately five years. Klee works at SMMHC and receives wages in return, even though patients are not required to work. Dr. Reddy testified that SMMHC wants all patients to work to improve their self-esteem and keep their job skills so that they have those skills when they leave the facility. Both Dr. Reddy and Work Therapy Specialist Ms. Lisa Nokes ("Ms. Nokes") did not believe Klee's disability would have prevented him from performing the job tasks he was assigned at SMMHC. Ms. Nokes is in charge of assessing clients, placing them in the therapeutic work program, and assessing their progress and behaviors on an ongoing basis. Klee, in performing his work duties, is given a work shift and is required to arrive and leave work at a particular time.

Ms. Kelly LaBruyere ("Ms. LaBruyere"), a Reimbursement Officer at SMMHC, has a case load of consumers, patients and clients for whom she is responsible in determining whether those individuals have resources with which they can reimburse the State for their treatment. The Department of Mental Health applies, pursuant to 9 CSR 10-31.011(10), the standard means test, which requires the department to apply toward the cost of a client's services forty percent of all net earned income exceeding $100 per month for working clients. Klee is on the payroll of SMMHC.

On May 5, 2016, the circuit court affirmed the determination of the MHRC that there was no employer-employee relationship between Klee and SMMHC for two reasons. First, the circuit court found that Klee meets a statutory exception to the definition of "employee" as defined by section 290.500(3). Second, the circuit court found that considering Klee an employee would be inconsistent with the MHRA. Klee appeals.

## Standard of Review

Individuals bringing claims under the MHRA pursuant to section 213.055 may, within 180 days of the alleged act of discrimination, file a complaint with the MHRC. Any person aggrieved by the order of the MHRC may appeal as provided in Chapter 536. *See* Section 213.075.16. Section 536.150.1 authorizes review by "suit for injunction, certiorari, mandamus, prohibition or other appropriate action . . . ."

■ "On appeal from the circuit court's review of a non-contested administrative decision, we review the circuit court's judgment, not the administrative agency's decision." *Spurgeon v. Mo. Consolidated Health Care Plan*, 481 S.W.3d 604, 606 (Mo. App. W.D. 2016).

Appellate review of the circuit court's judgment in a noncontested case is essentially the same as the review for a court-tried case. [*State ex rel. Straat-*

*mann Enter., Inc. v. County of Franklin*, 4 S.W.3d 641, 645 (Mo. App. W.D. 1999).] Thus, the scope of appellate review is governed by Rule 73.01 as construed in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Cade v. State*, 990 S.W.2d 32, 37 (Mo. App. W.D. 1999). Accordingly, the appellate court reviews the circuit court's judgment to determine whether its finding that the agency decision was or was not unconstitutional, unlawful, unreasonable, arbitrary, capricious, or the product of an abuse of discretion rests on substantial evidence and correctly declares and applies the law. *Id.* *Mo. Nat'l Educ. Assoc. v. Mo. State Bd. of Educ.*, 34 S.W.3d 266, 274-75 (Mo. App. W.D. 2000); *see also Sch. Dist. of Kansas City, Mo. v. Mo. Bd. of Fund Com'rs*, 384 S.W.3d 238, 264 (Mo. App. W.D. 2012).

## Analysis

■ In Point One, Klee argues the circuit court erred in finding that he meets a statutory exception to the definition of "employee" under section 290.500(3)(b) as the Missouri Human Rights Act does not define "employee" and it was legal error to apply the statutory exception relied upon by the trial court to deny his employee status.[2] Klee argues there was substantial and competent evidence in the record that he was an employee of SMMHC.

■ "The MHRA protects important societal interests by prohibiting unlawful employment practices on the basis of race, color, religion, national original, sex, ancestry, age, or disability." *Howard v. City of Kansas City*, 332 S.W.3d 772, 779 (Mo.

banc 2011). Section 213.055.1 applies specifically to employment practices and states:

It shall be an unlawful employment practice:

(1) For an employer, because of the race, color, religion, national origin, sex, ancestry, age or disability of any individual:

(a) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, national origin, sex, ancestry, age or disability;

(b) To limit, segregate, or classify his employees or his employment applicants in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, national origin, sex, ancestry, age or disability;

"Employer" is defined under the MHRA, in relevant part, as "including the state, or any political or civil subdivision thereof, or any person employing six or more persons within the state, and any person directly acting in the interest of an employer." Section 213.010(7). SMMHC admitted in its pleadings that it was part of the Missouri Department of Mental Health, and the MHRC does not contest on appeal that SMMHC is an "employer" governed by the MHRA.

---

2. Klee's Points One and Two on appeal are multifarious in that they both present distinct claims of error that should be asserted in separate points relied on. *See State v. Robinson*, 454 S.W.3d 428, 437 n.6 (Mo. App. W.D. 2015). In general, multifarious points preserve nothing for appellate review and are subject to dismissal. However, because we prefer to decide cases on the merits where appellant's argument is readily understandable—as is the case here—we have elected to exercise our discretion to review the merits of the arguments set forth in the points relied on.

"Employee," however, is not defined in the MHRA. *See* Section 213.010. The definition of "employee" in the MHRA was considered and defined by our Missouri Supreme Court in *Howard v. City of Kansas City*, 332 S.W.3d 772 (Mo. banc 2011). Because the MHRA does not define the term "employee," the Supreme Court looked to dictionary definitions to construct the statute and concluded as follows:

> The word "employee" is commonly defined as "one employed by another, usually in a position below the executive level and usually for wages," as well as "any worker who is under wages or salary to an employer and who is not excluded by agreement from consideration as such a worker." Webster's Third New International Dictionary 743 (1993). To "employ" means "to provide with a job that pays wages or a salary or with a means of earning a living." *Id.*

*Id.* at 780. Utilizing this definition of "employee" under the MHRA, Klee falls within the classification as an employee of employer SMMHC, as he works for SMMHC in return for wages and, as a part time dishwasher and occasional greenhouse laborer, is not at the executive level. Again, the circuit court's judgment and the MHRC's argument on appeal apparently concede this fact as neither address it at all and both rely on a statutory *exception* to the definition of an "employee" found in the "Minimum Wage Law", section 290.500, to argue that Klee is not an employee of SMMHC under the MHRA.

The statutory exception relied upon by the circuit court to determine Klee is not an "employee" is contained in section 290.500, which is the definitional section of Missouri's Minimum Wage Law. Section 290.500(3) provides that an "Employee" is "any individual employed by an employer," except that the term employee shall not include, *inter alia,*

(b) Any individual engaged in the activities of an educational, charitable, religious, or nonprofit organization where the employer-employee relationship does not, in fact, exist or where the services rendered to the organization are on a voluntary basis.

The circuit court found that Klee was statutorily exempt from being considered an "employee" under the MHRA pursuant to this section.

■ We find that the circuit court's decision was in error. First, neither the circuit court nor the MHRC provides any reason to believe that the legislature intended to limit the definition of "employee" under the MHRA by statutory exceptions to the definition of "employee" under the Missouri Minimum Wage Law. The definitions contained in section 290.500 by its own terms are limited to sections 290.500 through 290.530. *See* Section 290.500. The Missouri Human Rights Act is codified in Chapter 213.

Second, the Missouri Supreme Court made clear in *Howard* that "employee" under the MHRA is *not statutorily defined* and, therefore, we must consider the term in its plain and ordinary meaning by utilizing the dictionary. *See Howard*, 332 S.W.3d at 780. The Supreme Court *did not* look to the Missouri Minimum Wage Law and import its definition and exemptions for the term "employee"; no mention is made in *Howard* of Chapter 290 whatsoever. The MHRC has cited no case in which the definition of "employee" for the purposes of the Missouri Minimum Wage Law has been imported and applied to the MHRA. Neither has the MHRC argued that subsequent to *Howard* the legislature took any action to address and change the definition of employee as set forth in *Howard.* The list of exemptions under the Minimum Wage Law is extensive, containing

fifteen categories of excluded persons.[3] There is simply no justification provided or reason to believe the legislature intended to define employee for the purposes of the MHRA in such a limited manner.

Finally, even if we were to find that the exemption did in fact apply, which we do not, we are not persuaded that Klee would fall within the exception. The MHRC's argument that a state agency should be considered a "nonprofit" is highly dubious. The case relied upon by the MHRC, *State ex rel. Francis v. McElwain* considered whether the Missouri State Public Defender's Office ("MSPDO") qualified under section 514.040.3 as a "legal aid society or a legal services or other nonprofit organization funded in whole or substantial part by moneys appropriated by the general assembly of the state of Missouri." 140 S.W.3d 36, 38 (Mo. banc 2004). The court found that *although* the MSPDO was a governmental entity *rather than a nonprofit*, it still met the requirements of the statute as it was a "nonprofit" in the sense that it does not operate for the purpose of making a profit and met the remaining requirement under the statute that it was funded by the general assembly. *Id.* Additionally, we think it was also relevant that the MSPDO is of a kind with a "legal aid society" or "legal services organization" also identified in section 514.040.3. Here, section 290.500(3)(b) applies to "[a]ny individual engaged in the activities of an *educational, charitable, religious, or nonprofit*

---

3. The categories of persons excluded by section 290.500(3) include:

(a) Any individual employed in a bona fide executive, administrative, or professional capacity;

(b) Any individual engaged in the activities of an educational, charitable, religious, or nonprofit organization where the employer-employee relationship does not, in fact, exist or where the services rendered to the organization are on a voluntary basis;

(c) Any individual standing in loco parentis to foster children in their care;

(d) Any individual employed for less than four months in any year in a resident or day camp for children or youth, or any individual employed by an educational conference center operated by an educational, charitable or not-for-profit organization;

(e) Any individual engaged in the activities of an educational organization where employment by the organization is in lieu of the requirement that the individual pay the cost of tuition, housing or other educational fees of the organization or where earnings of the individual employed by the organization are credited toward the payment of the cost of tuition, housing or other educational fees of the organization;

(f) Any individual employed on or about a private residence on an occasional basis for six hours or less on each occasion;

(g) Any handicapped person employed in a sheltered workshop, certified by the department of elementary and secondary education;

(h) Any person employed on a casual basis to provide baby-sitting services;

(i) Any individual employed by an employer subject to the provisions of part A of subtitle IV of title 49, United States Code, 49 U.S.C. §§ 10101 et seq.;

(j) Any individual employed on a casual or intermittent basis as a golf caddy, newsboy, or in a similar occupation;

(k) Any individual whose earnings are derived in whole or in part from sales commissions and whose hours and places of employment are not substantially controlled by the employer;

(*l*) Any individual who is employed in any government position defined in 29 U.S.C. §§ 203(e)(2)(C)(i)-(ii);

(m) Any individual employed by a retail or service business whose annual gross volume sales made or business done is less than five hundred thousand dollars;

(n) Any individual who is an offender, as defined in section 217.010, who is incarcerated in any correctional facility operated by the department of corrections, including offenders who provide labor or services on the grounds of such correctional facility pursuant to section 217.550;

(*o*) Any individual described by the provisions of section 29 U.S.C. 213(a)(8);

*organization* [....]" A plain reading of the statute would indicate that the legislature did not intend to include a state agency as covered by this section. In fact, section 290.500(3)(n), which excludes inmates in a correctional facility operated by the Department of Corrections as being considered employees, establishes that the legislature knew exactly how to exempt persons similarly situated to Klee and exempt a state agency, if they were so inclined. If the legislature had intended patients who work for the Department of Mental Health to be exempt, they could have done so in the same fashion that they exempted prisoners housed in the Department of Corrections. *See* section 290.500(3)(n). Klee was also paid a wage at or above the Missouri minimum wage and was clearly not working on a "voluntary basis".[4]

We find that the first basis relied upon by the circuit court in finding the lack of an employer/employee relationship between Klee and the SMMHC was in error.

■ In Point Two, Klee challenges the circuit court's second and independent finding that the use of a job as therapy removes it from being employment under the MHRA because it is an erroneous application of the law in that the economic realities of the work in which Klee was engaged demonstrate that Klee received wages for providing work that provided a consequential economic benefit to SMMHC.

The second basis relied upon by the circuit court, and the MHRC on appeal, to argue Klee does not qualify as an employee is that "the purpose of his work as a dishwasher at SMMHC was to prepare [Klee] for eventual release into the community and to teach him pro-social skills, as well as to handle money in a responsible way. The use of job as therapy removes it from being employment because that purpose (therapy) is inconsistent with the job being employment for the purposes of the Missouri Human Rights Act." The circuit court provided no citation or authority to support this proposition.

On appeal, the MHRC supports this proposition by citing a case decided by the Eighth Circuit federal appeals court in which it considered whether under the Fair Labor Standards Act ("FLSA") inmates should be considered employees covered by its provisions. *See McMaster v. Minn.*, 30 F.3d 976, 980 (8th Cir. 1994). In that case, the Eighth Circuit held that

> inmates such as the present plaintiffs, who are required to work as part of their sentences and perform labor within a correctional facility as part of a state-run prison industries program are not "employees" of the state or prison within the meaning of the Fair Labor Standards Act. The economic reality of the relationship between inmates and the DOC dictates that the inmates not be considered employees. The inmates have not volunteered or contracted to work

4. Because we have decided that the statutory exceptions in section 290.500(3) are not applicable to the MHRA, we need not decide whether section 290.500(3)(b) would have applied to Klee. The Court will note, however, that the particular provision relied upon by the circuit court provides, in relevant part, that a person who is employed by an employer does not qualify as an employee if he is "engaged in the activities of an educational, charitable, religious, or nonprofit organiza- tion where the employer-employee relationship does not, in fact, exist [....]" We do not need to determine today how a person could be considered "employed by an employer" in circumstances where an "employer-employee relationship does not, in fact, exist" or why, if no employer-employee relationship does in fact exist, it would be consequential or necessary that the employer were an "educational, charitable, religious, or nonprofit organization."

for the State; they are assigned and required to do so.

*Id.* at 980.

We do not find *McMaster* persuasive. First, *McMaster*, being an interpretation of federal law and the FLSA, has no direct bearing on the question here: whether the Missouri legislature has excluded from the protections of the MHRA clients of a Missouri state agency who perform work, which serves, amongst other purposes, a therapeutic function. Second, the facts here are sufficiently distinct as to make *McMaster's* rational unpersuasive. Unlike *McMaster*, Klee is not an inmate but rather a patient who is part of a treatment program. He is not required to work but has chosen to work. More importantly, the Eighth Circuit explained that considering an inmate an employee would not be consistent with the *purpose* of the FLSA, because "[t]he primary purpose of the FLSA—providing minimum standards of living for workers—has no application in the prison context. Food, clothing and shelter are provided to the prisoners by the state, regardless of their ability to pay." *Id.* Further, "[r]equiring the payment of minimum wage for a prisoner's work in prison would not further the policy of ensuring a 'minimum standard of living,' because a prisoner's minimum standard of living is established by state policy; it is not substantially affected by wages received by the prisoner." *Id.* (quoting *Vanskike v. Peters*, 974 F.2d 806, 810 (7th Cir. 1992)). The purpose of the MHRA, as already explained, is to protect individuals from discrimination. *See Howard*, 332 S.W.3d at 779. Neither the circuit court nor the MHRC on appeal has provided any valid argument as to why the purpose of the MHRA would not be furthered by

providing its protections to Klee. The MHRC states that the fact the job serves a therapeutic purpose makes the protections of the MHRA inappropriate without explaining why. The MHRC provides no reason why the State should be allowed to discriminate against individuals with disabilities, who would otherwise be considered an employee under the MHRA. The plain language of the MHRA, as construed by *Howard*, clearly offer its protections to Klee as an employee of SMMHC. We find that the fact the job serves, in part, a therapeutic function is inconsequential as to whether the MHRA's protections apply.

■ In making this decision, the Court is mindful that "[t]he interpretation and construction of a statute by an agency charged with its administration is entitled to great weight." *Farrow v. Saint Francis Med. Ctr.*, 407 S.W.3d 579, 592 (Mo. banc 2013). However, the MHRC's determination in this case that no employer-employee relationship existed between Klee and SMMHC is directly contrary to the Missouri Supreme Court's decision in *Howard*, defining who is an employee under the MHRA. The MHRC's decision excluding Klee from the protection from discrimination established under the MHRA is unreasonable and inconsistent with the plain language and purpose of the MHRA.

Points One and Two are well taken.[5]

### Conclusion

We reverse the judgment of the circuit court and remand for further proceedings consistent with this opinion.

All concur

---

5. The Court expresses no opinion with regard to the merits of Klee's underlying claim of discrimination.