Karen King Mitchell, Judge
Seth Reynolds appeals, following a bench trial, a permanent injunction issued in favor of Boone County and against Reynolds, requiring him to remove a detached garage, privacy fence, and satellite dish he had erected in the public right-of-way adjacent to a public road in Boone County, Missouri. Reynolds raises three points on appeal, all of which are focused on what he claims is a dearth of evidence demonstrating that any of the structures resulted in harm to County. Finding no error, we affirm.
Background[1]
Sometime before June 21, 2013, without first obtaining a building permit, Reynolds began construction on a detached garage, *27 measuring approximately forty-by-forty feet, near his home on Creasy Springs Road in Boone County, Missouri. The garage sat approximately eighteen-to-twenty feet off the edge of the paved road. After he had installed the footings and piers for the garage, his builders expressed concern about the location of a nearby power line and its potential interference with continued construction. Consequently, Reynolds contacted Boone Electric to see about having the power line relocated. When a representative from Boone Electric showed up, he advised Reynolds that, in order to obtain a permit to relocate the power line, Reynolds first needed a building permit for the garage. Accordingly, Reynolds contacted County and requested and received a building permit on June 21, 2013.
Four days after Reynolds received a building permit, Uriah Mach, a land-use planner for County, sent Reynolds an email, advising Reynolds that the garage was located too close to Creasy Springs Road[2] and that Reynolds would need to apply to the Board of Adjustment for a variance before proceeding any further.[3] Mach did not hear back from Reynolds but followed up the email with two letters, dated July 9, 2013, and July 24, 2013.[4] In both letters, Mach advised Reynolds that County was taking issue with the location of his garage and that Reynolds needed to take some action to address it. Reynolds did not immediately respond to County's notifications, instead he proceeded with the completion of the garage.
Sometime in 2015, Reynolds finally applied for a variance for the setback violations with the Board of Adjustment. The Board unanimously declined Reynolds's request. Thereafter, County demanded that Reynolds take action to bring his property into compliance with both the right-of-way and the zoning regulations, but Reynolds refused. Thereafter, County filed a petition for permanent injunction against Reynolds, alleging that Reynolds's property "denied [County] the access to th[e] right-of-way ..., together with the land-use authority statutorily granted to [County] to establish, promulgate, and enforce zoning regulations, thereby causing [County] irreparable harm," and that Reynolds's actions were "perpetual, and so [County] has no adequate remedy at law." County sought a permanent injunction, "mandating that [Reynolds] comply with Boone County, Missouri zoning regulations, and that he remove the accessory building, the fence, and the satellite dish from ... the right of way area, ... the setback area, ... [and] the area in front of the main building."
At trial, the court received testimony from Mach and a surveyor describing the *28 location of the right-of-way boundaries, the setback boundary, and the various items of Reynolds's property. The court also received testimony from Reynolds indicating that he had not been aware of his need to obtain a permit before constructing the garage, that other nearby properties appeared to be in violation of the same right-of-way and setback requirement, and that it cost Reynolds $30,000-35,000 to construct the garage.[5] After hearing the evidence, the trial court found that
[Reynolds] has unlawfully constructed and maintains on his property an unlawful accessory building abutting North Creasy Springs Road, together with a fence and a satellite television receiver dish between that building and North Creasy Springs Road, all in violation of plaintiff Boone County's Ordinances and which all unlawfully encroach on the 25-foot setback area established by the Boone County Zoning Regulations and upon the Plaintiff's right of way abutting North Creasy Springs Road in front of that property.
The trial court entered a permanent injunction, requiring Reynolds to
remove in its entirety that building, that fence, and that satellite receiver dish from the Boone County setback area and Boone County's North Creasy Springs Road Right of Way within 60 days of the date of th[e] Judgment and ... permanently restrained and enjoined [Reynolds] from building or maintaining any structures in that setback area or in that right of way in the future.
Reynolds appeals.
Standard of Review
"An action seeking injunction is an action in equity." City of Greenwood v. Martin Marietta Materials, Inc. , 311 S.W.3d 258, 263 (Mo. App. W.D. 2010). "The standard of review in a court-tried equity action is the same as for any court-tried case; the trial court's judgment will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." Id. (citing Murphy v. Carron , 536 S.W.2d 30, 32 (Mo. banc 1976) ). "To the extent that a trial court's grant of injunctive relief involves weighing the evidence presented, determining the credibility of witnesses, and formulating an injunction of the appropriate scope, this court reviews for abuse of discretion." Id. "The trial court abuses its discretion when the judgment is clearly against the logic of the circumstances then before the trial court and is so arbitrary and unreasonable as to shock the sense of justice and indicates a lack of careful consideration." Burg v. Dampier , 346 S.W.3d 343, 357 (Mo. App. W.D. 2011).
Analysis
Reynolds brings three claims on appeal. First, he argues that the trial court's judgment was not supported by substantial competent evidence and misapplied the law insofar as there was no evidence of irreparable injury and County had an adequate remedy at law. Second, he argues that the judgment was not supported by substantial evidence and erroneously applied the law insofar as there was no evidence of harm to County, while there was evidence of harm to Reynolds if required to remove the property; thus, the *29 balancing of equities favored Reynolds.[6] Finally, Reynolds argues that there was no substantial evidence of interference with the rights of the public, as is required to support elements of both public nuisance and trespass causes of action.
A. The record supports County's entitlement to a permanent injunction.
In his first point, Reynolds claims, essentially, that County failed to prove entitlement to a permanent injunction insofar as the evidence failed to establish the two elements required. We disagree.
"The elements of a claim for permanent injunction include: (1) irreparable harm, and (2) lack of adequate remedy at law." City of Greenwood , 311 S.W.3d at 265. Reynolds claims that County failed to adduce any evidence demonstrating either element.
In cases such as this, County makes out a prima facie case for permanent injunction where it "introduce[s] the ordinance and establishe[s] that [the] respondents' structure was located in violation of that ordinance." St. Louis Cty. v. Turpin , 672 S.W.2d 391, 392 (Mo. App. E.D. 1984). By definition, " 'prima facie evidence' means such evidence which, in law, is sufficient to satisfy the burden of proof to support a verdict in favor of the party by whom it is introduced when not rebutted by other evidence." State ex rel. State Dep't of Pub. Health and Welfare v. Ruble , 461 S.W.2d 909, 913 (Mo. App. 1970). Here, Reynolds does not dispute that County introduced evidence of both the applicable ordinances and the location of his property in violation of those ordinances. In fact, he conceded as much in the stipulations entered as Exhibit 5, wherein he admitted that his property was located in violation of various zoning ordinances and that he refused to remove it. Reynolds never challenged the scope or applicability of any of the ordinances, nor did he challenge any of County's evidence that his property was located in violation of those ordinances or in County's right-of-way. Accordingly, his claim that the judgment granting County a permanent injunction was not based on substantial evidence is, quite simply, without merit.
It appears that Reynolds's real challenge is to the trial court's application of the law insofar as he believes the court was required to find harm to either the public safety or health in order to find irreparable injury and that the existence of potential criminal penalties (imposition of a fine for zoning violations) constituted an adequate remedy at law for County, thus barring its right to a permanent injunction.
"While the threat of irreparable harm and lack of an adequate remedy at law must usually be specifically shown for injunctive relief to be granted, '[w]here a trespass is recurring and would involve a multiplicity of suits an injunction will lie to restrain it.' " Kugler v. Ryan , 682 S.W.2d 47, 49 (Mo. App. E.D. 1984) (quoting Reprod. Health Servs., Inc. v. Lee , 660 S.W.2d 330, 335 (Mo. App. E.D. 1983) )
*30 (internal citation omitted). It is "uniformly accepted that injunction is a proper remedy for an interference with a right of way whenever the injury complained of is irreparable, the interference is of a permanent and continuous nature, or the remedy at law by an action for damages will not afford adequate relief." Id. at 50 (quoting Winslow v. Sauerwein , 285 S.W.2d 21, 25 (Mo. App. 1955) ) (emphasis in original). "Missouri cases adopt the theory that irreparable harm need not be shown in the case of a repeated or continuing trespass." Id. at 50.
Here, Reynolds's garage, satellite dish, and privacy fence plainly interfered with County's property interest in the right-of-way surrounding Creasy Springs Road, and that interference was of a permanent and continuous nature. County was not required to show any further harm, and we reject Reynolds's claim to the contrary.
As for Reynolds's claim that the existence of potential criminal penalties constitutes an adequate remedy at law, that claim has also been soundly rejected by Missouri courts. "The jurisdiction of equity to prevent irreparable injury to property is not divested by the fact that the act to be enjoined may also be a violation of the criminal law...." Kansas City Gunning Advert. Co. v. Kansas City , 240 Mo. 659, 144 S.W. 1099, 1103 (Mo. banc 1912) ; see also City of St. Louis v. Friedman , 358 Mo. 681, 216 S.W.2d 475, 479 (1949) ("We overrule appellant's contention that injunction is not the proper remedy because the ordinance provides for enforcement by fine.").
In short, Reynolds's arguments are based on a misapprehension of what the law requires. Because the evidence was sufficient to establish County's entitlement to a permanent injunction, Point I is denied.
B. The trial court did not abuse its discretion in balancing the equities.
In his second point, Reynolds argues that the trial court abused its discretion when balancing the equities in light of Reynolds's testimony that he was unaware of the need for a permit before starting construction, many other properties in the area appeared to have similar violations, and he expended a substantial amount of money constructing the garage and had no other place on his property to put it.
"Whether an injunction ordering the removal of a part of a building which encroaches upon land of another should be granted is a matter of the trial court's discretion in balancing the equities." Newmark v. Vogelgesang , 915 S.W.2d 337, 339 (Mo. App. E.D. 1996).
In "balancing the equities[,]" consideration is given to all the equities between the parties as disclosed by the circumstances of each particular case and the conflicting conveniences of the respective parties, the willfulness of the encroaching party, and the conduct of the party whose land has been encroached upon regarding acquiescence and laches are some of the factors to be weighted in "balancing the equities."
Id. (quoting Heinrich v. Hinson , 600 S.W.2d 636, 640-41 (Mo. App. W.D. 1980) ).
To begin, "[p]arties are presumed to know the law and cannot normally avoid an act or deed on the ground that they were ignorant of the law." Gen. Motors Corp. v. City of Kansas City , 895 S.W.2d 59, 62 (Mo. App. W.D. 1995). Thus, Reynolds's claimed lack of knowledge that he needed a permit before constructing the garage is irrelevant. The same is true of his argument that other nearby properties also appeared to be in violation: "The fact that others may be violating the ordinance *31 is no defense for appellant." Friedman , 216 S.W.2d at 479.
As for the money he expended constructing the garage, this fact does not tip the scales in favor of Reynolds, as he spent the money with full knowledge that his property was encroaching on the right-of-way and in violation of several zoning ordinances. At a minimum, he knew as early as June 21, 2013, that continued construction of the garage-which, at the time, consisted of only footings and piers-at that location was going to be problematic without first obtaining a variance from the Board of Adjustment. Yet Reynolds did not even seek a variance until sometime in 2015-at least a year and a half later-all the while apparently continuing construction and expending money at his own peril.
Reynolds's argument is essentially that, because County was not using the right-of-way at the time, it did not suffer any harm from the encroachment of his property upon it, while he would suffer great harm if forced to tear it down. But Reynolds's position is untenable. Accepting his theory would allow individuals to appropriate seemingly unused County property, at will, for an unlimited amount of time, rent free, unless and until County indicated a need to use the property. And, at that point, if the individual had expended a large amount of money improving the land, County would be unable to reclaim or assert its rights to the land, unless it could prove a greater harm. We are aware of no authority that would support such a patently unlawful appropriation of public land by private individuals. Contra Grommet v. St. Louis Cty. , 680 S.W.2d 246, 251 (Mo. App. E.D. 1984) ("a private person may not erect structures in any portion of a highway, whether traveled or not" because "private persons have no right to impede the public's use of a roadway").
We perceive no basis for finding that the trial court abused its discretion in balancing the equities. Accordingly, Point II is denied.
C. County did establish that Reynolds's property interfered with public rights.
In his final point, Reynolds argues that County failed to establish a necessary element of either a public nuisance or a trespass claim-namely that his garage, satellite dish, or privacy fence interfered with the rights of the public. We disagree.
"The public is entitled to the full and free use of all the territory embraced within a public roadway," including both "the paved portion of the roadway [and] the unpaved portion of the roadway easement." Id. "One is not justified in obstructing a highway [merely] because he leaves sufficient room for passage of the public. An obstruction placed anywhere within the highway limits, although outside of the traveled part, may constitute a nuisance." State ex rel. State Hwy. Comm'n v. Johns , 507 S.W.2d 75, 77 (Mo. App. 1974) (quoting 40 C.J.S. Highways § 218, p. 214). "[I]t is well settled that 'the public are entitled not only to a free passage along the highway, but to a free passage along any portion of it not in the actual use of some other traveler,' and if this be true it necessarily follows that there can be no rightful permanent use of the way for private purposes." Id. at 78 (quoting City of Emporia v. Humphrey , 132 Kan. 682, 297 P. 712, 714-15 (1931) ).
In short, any encroachment on a public right-of-way necessarily interferes with the rights of the public. Because the evidence indisputably demonstrated that Reynolds's garage, satellite dish, and privacy fence encroached in the public right-of-way for Creasy Springs Road, it supported a determination that Reynolds interfered *32 with the rights of the public. Accordingly, Point III is denied.
Conclusion
The trial court did not abuse its discretion in granting a permanent injunction requiring Reynolds to remove his garage, satellite dish, and privacy fence. Its judgment is affirmed.
Zel M. Fischer, Special Judge, Presiding, and Alok Ahuja, Judge, concur.

The underlying facts are largely uncontested, as most of them were stipulated to by both parties. To the extent any facts were contested below, they will be reviewed in the light most favorable to the trial court's judgment, as neither party requested findings of fact or conclusions of law. Rule 73.01(c) ("All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached."). All rule references are to the Missouri Supreme Court Rules (2017).

The garage both encroached on the public right-of-way for Creasy Springs Road and violated the twenty-five-foot building setback requirement under zoning regulations; a total of 1,250 square feet of the 1,804-square-foot building were improperly located. In the stipulations entered at trial, Reynolds acknowledged that his garage, satellite dish, and privacy fence were all in violation of various zoning regulations and encroached on County's right-of-way for Creasy Springs Road.

An inspection report from July 1, 2013, noted: "existing construction has setback issues. Board of Adjustment will be necessary for any further activities."

Though the email and inspection reports were introduced as exhibits at trial, Reynolds has not filed them with this court. Accordingly, we presume they supported the trial court's judgment and not Reynolds's claims on appeal. Curry Inv. Co. v. Santilli , 494 S.W.3d 18, 30 n.9 (Mo. App. W.D. 2016).

Reynolds was unable to testify as to the potential cost for removing or relocating the garage.

"[A] substantial-evidence challenge, a misapplication-of-law challenge, and an against-the-weight-of-the-evidence challenge ... are [all] distinct claims," and "must appear in separate points relied on in the appellant's brief to be preserved for appellate review." Ivie v. Smith , 439 S.W.3d 189, 199 n.11 (Mo. banc 2014). But, "because we prefer to decide cases on the merits where appellant's argument is readily understandable," Klee v. Mo. Comm'n on Human Rights , 516 S.W.3d 917, 920 n.2 (Mo. App. W.D. 2017), we will gratuitously address the merits of Reynolds's claims on appeal, despite his briefing errors. In the future, however, "[a]ppellate counsel should take caution to follow Rule 84.04(d)." Ivie , 439 S.W.3d at 199 n.11.