

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| JENNIFER ERIN MOORE, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | WD78641 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | March 22, 2016 |
| BRYAN ANDREW MOORE, | ) | |
| | ) | |
| Appellant. | ) | |

### Appeal from the Circuit Court of Jackson County, Missouri
### The Honorable Jack R. Grate, Judge

**Before Division II:** Cynthia L. Martin, Presiding Judge, and
Mark D. Pfeiffer and Karen King Mitchell, Judges

Mr. Bryan Andrew Moore ("Husband") appeals from the Judgment of the Circuit Court of Jackson County, Missouri ("trial court"), in favor of Ms. Jennifer Erin Moore ("Wife"), compelling enforcement of an underlying divorce decree relating to division of Husband's military retired pay. We affirm.

## Facts and Procedural History[1]

Husband and Wife were married in 1989 and divorced by the trial court via Judgment and Decree of Dissolution of Marriage on July 2, 2013 ("Dissolution Decree"). The Dissolution Decree was not appealed by either party and became a final judgment before the initiation by Wife of her motion seeking to compel, *inter alia*, enforcement of the terms of the Dissolution Decree.

Prior to the Dissolution Decree, Husband and Wife successfully negotiated a settlement agreement that would later be incorporated into the Dissolution Decree at the request of the parties. In that settlement agreement, the parties expressly undertook the task of agreeing upon a division of military benefits related to Husband's twenty-three years of active service to the United States Military and his retirement from active duty due to disability.

Of relevance to this appeal, the parties agreed that the sum paid by the United States Military would be deemed Husband's "Military Pension," that Wife would receive fifty percent (50%) of Husband's monthly Military Pension payments (including 50% of any cost of living increases), and that the 50% calculation would only be reduced by any monthly premium reduction for Survivor Benefit Plan (SBP) costs. The agreement expressly defined Military Pension to include monthly benefits that represented Husband's "retired pay . . . actually or constructively waive[d] . . . in any manner and for any reason or purpose." Thus, for example, in the spring and early summer of 2014, Husband's monthly gross pay from the United States Military ($3,578.00) less SBP costs ($232.63) equaled $3,345.37, and Husband paid Wife $1,672.68, representing 50% of the net monthly military payment of $3,345.37.

---

[1] We view the evidence in the light most favorable to the judgment. *Walker v. Lonsinger*, 461 S.W.3d 871, 874 (Mo. App. W.D. 2015).

In reality, the entire amount of Husband's monthly payments from the United States Military represented payments related to disability and any associated waivers of retired pay.

The parties requested that the trial court incorporate the terms of the settlement agreement into the Dissolution Decree, which the trial court did, noting as follows, in pertinent part:

> For the purpose of interpreting the intention of the Court in making this division, Military Pension includes retired pay paid *or to which [Husband] would be entitled for longevity of active duty* and/or reserve component military service and all payments paid or payable under the provisions of Title 38 or Chapter 61 of Title 10 of the United States Code, before any statutory, regulatory, or elective deductions are applied (except for deductions because of an election to provide a survivor benefit annuity to [Wife]). *It also includes all amounts of retired pay [Husband] actually or constructively waives or forfeits in any manner and for any reason or purpose, including but not limited to any waiver made in order to qualify for Veterans Administration benefits*, or reduction in pay or benefits because of other federal employment.

(Emphasis added.) Not only was this language derived exactly from the wording proposed by the parties in their settlement agreement, but both parties' attorneys signed the Dissolution Decree under the trial court's signature, "approv[ing]" the Dissolution Decree "as to form." The Dissolution Decree was signed by the trial court on July 2, 2013, neither party appealed from the Dissolution Decree, and it became a final judgment.

On or around July 1, 2014, Husband received a letter from the Defense Finance and Accounting Service ("DFAS") stating: "The entire amount of the member's retired/retainer pay is based on disability, thus there are no funds for payment under the USFPA."[2] Husband ceased making payments as ordered by the Dissolution Decree. Wife sought relief from the trial court related to enforcing the Dissolution Decree. The trial court entered judgment on April 8, 2015,

---

[2] Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408(c)(1). Nothing in our ruling today is designed to suggest that the DFAS is otherwise bound by enforcement of the terms of the Dissolution Decree (or any corresponding Qualifying Retirement Benefits Court Order), to the extent any terms of the Dissolution Decree may be preempted by federal law relating to military retired pay—only that Husband is bound to the terms of the Dissolution Decree via the doctrine of *res judicata*.

3

ordering Husband to resume making the monthly "Military Pension" payments as directed by the Dissolution Decree and to otherwise become current on his past-due obligations to Wife. Husband appealed.

**Standard of Review**

Appellate review of this court-tried civil case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *See Booher v. Booher*, 125 S.W.3d 354, 356 (Mo. App. E.D. 2004) (stating appellate court review of trial court's ruling regarding a motion seeking to enforce a dissolution decree is pursuant to *Murphy v. Carron*). We must affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32. Although we defer to the trial court's factual determinations, we review issues of law *de novo*. *Morgan v. Morgan*, 249 S.W.3d 226, 230 (Mo. App. W.D. 2008).

**Analysis**

In Husband's sole point on appeal, though he couches his claim of error as one involving a mistake of law in the present judgment (as it relates to military retired pay), he essentially argues that the trial court never had authority to divide Husband's military disability payments as a marital asset *in the Dissolution Decree*; hence, Husband argues that any attempt by the trial court to enforce the Dissolution Decree in the present proceeding violates federal law on the topic of military retired pay. In reality, then, Husband is collaterally attacking the Dissolution Decree, which has become a final judgment, by asserting that the Dissolution Decree contains a mistake of law—a mistake of law, coincidentally, that Husband *requested* the trial court incorporate into the Dissolution Decree in the first instance. To state Husband's argument is to understand our disdain for it.

4

> Members of the Armed Forces who serve for a specified period may receive retired pay upon their retirement. *Mansell v. Mansell*, 490 U.S. 581, 583, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989). "Veterans who became disabled as a result of military service are eligible for disability benefits." *Id.*; *see* 38 U.S.C. §§ 1110, 1131. The amount of disability benefits a veteran is eligible to receive is calculated according to the seriousness of the disability and the degree to which the veteran's ability to earn a living has been impaired. *Mansell*, 490 U.S. at 583, 109 S.Ct. 2023; *see* 38 U.S.C. §§ 1114, 1155. "In order to prevent double dipping, a military retiree may receive disability benefits only to the extent that he [or she] waives a corresponding amount of his military retired pay." *Mansell*, 490 U.S. at 583, 109 S.Ct. 2023. "Because disability benefits are exempt from federal, state, and local taxation, military retirees who waive their retired pay in favor of disability benefits [can] increase their after-tax income." *Id.* at 583-84, 109 S.Ct. 2023 (citation omitted).

*Morgan*, 249 S.W.3d at 230.

> The Uniformed Services Former Spouses' Protection Act [USFSPA] authorizes state courts to treat "disposable retired pay" as marital property. 10 U.S.C. § 1408(c)(1) (1988 & Supp. V 1993). Missouri considers military *nondisability* retirement benefits received for service during marriage as marital property. *Moritz v. Moritz*, 844 S.W.2d 109, 115 (Mo. App. 1992). The USFSPA defines "disposable retired pay" as "the total monthly retired pay to which a [military] member is entitled," minus certain deductions. 10 U.S.C. § 1408(a)(4). *Among these deductions are amounts waived in order to receive disability benefits*, § 1408 (a)(4)(B), and amounts deducted as premiums for a SBP, § 1408(a)(4)(D). The United States Supreme Court has interpreted this statute to *preclude an award to a former spouse of any amounts of retired pay which do not fall within the definition of "disposable retired pay."* *Mansell*, 490 U.S. at 590, 109 S.Ct. at 2029.

*In re Marriage of Strassner*, 895 S.W.2d 614, 616 (Mo. App. E.D. 1995) (emphasis added).[3] "It

is clear that under *Mansell* a state court may not treat military retirement pay that has been

---

[3] However, in *Strassner*, the Eastern District of this Court concluded that the trial court's dissolution judgment could prohibit a retiree from waiving retired pay benefits (*i.e.*, for disability) and require that retiree indemnify his former spouse for her portion of any such waived benefits without violating *Mansell*. *In re Marriage of Strassner*, 895 S.W.2d 614, 617-18 (Mo. App. E.D. 1995). In other words, where a former spouse is awarded a portion of retiree's disposable retired pay—and retiree is not then disabled—to protect against the "threatened contingency" of a waiver by the retiree, the contingency may be addressed in the "broad discretion" of the trial court to "design a plan to protect the parties' rights and best interests." *Id.* at 618. Here, however, at the time the Dissolution Decree was entered, there was no "threatened contingency." The parties were both fully aware that the contingency of disability had already come to fruition, and that contingency was taken into account by the parties in the settlement agreement that was incorporated into the Dissolution Decree at the parties' request.

waived to receive veterans' disability benefits as property divisible in a dissolution action." *Id.* at 617 (internal quotation omitted).

"Although *the trial court* may not have authority to do so, however, *the parties* may agree to a property division which awards one spouse a share of the other spouse's nonmarital property." *Roberts v. Roberts*, 432 S.W.3d 789, 794 (Mo. App. W.D. 2014). *See also Franken v. Franken*, 191 S.W.3d 700, 702 (Mo. App. W.D. 2006) (stating that a separation agreement in which the parties agreed that a part of husband's nonmarital property pension was to be awarded to wife was enforceable so long as: the parties had voluntarily reached the agreement; it was not unconscionable; the parties had requested that it be incorporated into the dissolution decree; and the trial court had so incorporated the agreement into the dissolution decree). The same is true in this case.

Here, at the behest of the parties, after voluntarily agreeing to the terms of their property settlement agreement, the trial court incorporated the settlement agreement into the Dissolution Decree and, accordingly, treated certain of Husband's nonmarital *disability* payments from the United States Military as marital property and divided that asset in the Dissolution Decree. Though *the trial court* may not have possessed the authority to do so on its own, *the parties* were entitled to enter into an amicable settlement agreement awarding Wife a portion of Husband's nonmarital property; they did. It was not error for the trial court to incorporate the parties' settlement agreement into the Dissolution Decree, and the Dissolution Decree was enforceable as written. Even were we addressing a trial court's unlawful property distribution in a contested dissolution, the Dissolution Decree has at this time become a final judgment and cannot be the subject of this appeal. Instead, the question presented in this appeal is whether Husband may collaterally attack what he argues is a mistake of law from the Dissolution Decree as a basis for

refusing to comply with the terms of the Dissolution Decree in the present contempt proceeding. We conclude he may not do so.

*Collateral Attack of Dissolution Decree*

"A collateral attack is an attempt to impeach a judgment in a proceeding not instituted for the express purpose of annulling the judgment." *Noakes v. Noakes*, 168 S.W.3d 589, 596-97 (Mo. App. W.D. 2005) (internal quotation omitted). "In general, a final judgment is immune from collateral attack so long as the court had personal and subject matter jurisdiction and the judgment was not void on its face." *Id.* at 597. Although in *Noakes*, the appellant framed her argument in terms of jurisdiction (*i.e.*, a lack of jurisdiction renders a judgment—even a final judgment—void), we observed that her real complaint was that the dissolution court misapplied the law. *Id.* at 598. We noted that "[n]othing is better settled than the principle that an erroneous judgment has the same *res judicata* effect as a correct one." *Id. See also McIntosh v. Wiggins*, 204 S.W.2d 770, 773 (Mo. 1947) ("[W]hen a court has jurisdiction, it has jurisdiction to commit error." (internal quotation omitted)). "If the court made a mistake, it was a mistake of law, and any mistake of law should have been addressed on direct appeal." *Noakes*, 168 S.W.3d at 598. "In brief, *res judicata* bars the same parties from re-litigating the same cause of action that has been previously adjudicated by a final judgment on the merits, or from later raising a claim stemming from the same set of facts that should have been raised in the first suit." *Johnson Controls, Inc. v. Trimmer*, 466 S.W.3d 585, 591 (Mo. App. W.D. 2015).

Of note, on remand from the United States Supreme Court's decision in *Mansell v. Mansell*, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989), the California Court of Appeals concluded that *Mansell* did not divest state courts of *jurisdiction* to divide military retired pay that was otherwise subject to waiver by the military retiree; rather, the court concluded that

7

*Mansell* merely instructed that federal law preempted state law regarding the determination of the character of military pension benefits. *In re Marriage of Mansell*, 265 Cal. Rptr. 227, 231-32 (Cal. Ct. App. 1989). But once it is established that the court possesses subject matter and personal jurisdiction, "[t]he fact that a court shall decide erroneously does not affect the validity or the finality of a judgment any more than to decide correctly." *Id.* at 233. Ultimately, then, the California appellate court applied the doctrine of *res judicata* to the final judgment and refused to re-open the case to correct any mistakes of law in the original dissolution judgment. *Id.* at 230. In response, the Supreme Court of the United States refused to grant either mandamus or certiorari. *Mansell v. Mansell*, 498 U.S. 806, 111 S.Ct. 237, 112 L.Ed.2d 197 (1990).

Here, there is no question that the trial court possessed both subject matter and personal jurisdiction when it entered the Dissolution Decree. Likewise, there is no question that the Dissolution Decree is a final judgment. Even were we to conclude that the trial court erred in its classification of Husband's military retired pay in the Dissolution Decree (which we do *not* so conclude pursuant to *Roberts* and *Franken*), any such error would have been one of law—not jurisdiction. Husband may not now attempt to impeach the Dissolution Decree nor resurrect the issue of Husband's military retired/disability pay under the guise of arguing that the issue is "new" to the parties in the subject contempt proceeding. It is not a "new" issue and, to the extent that Husband had complaints about the alleged mistake of law declared in the Dissolution Decree, his recourse was to directly appeal the Dissolution Decree. Since he did not do so, even an alleged "erroneous [Dissolution Decree] has the same *res judicata* effect as a correct one," *Noakes*, 168 S.W.3d at 598, and it was certainly not error for the trial court to enforce the Dissolution Decree in the present proceeding.

Husband's point on appeal is denied.

## Conclusion

The judgment of the trial court is affirmed.

_____
Mark D. Pfeiffer, Judge

Cynthia L. Martin, Presiding Judge, and
Karen King Mitchell, Judge, concur.

9