Gary D. Witt, Judge
Stephen Richardson ("Stephen")[1] appeals the circuit court's judgment granting his First Amended Motion to Modify Decree of Dissolution for Reduction of Maintenance. Stephen argues that the motion court erred in ordering $1,960.00 of modifiable *714 spousal maintenance payable from him to Karla Richardson ("Karla") because the trial court failed to include Karla's $1,730.00 monthly pension income from her portion of his marital military pension in determining her ability to meet her reasonable needs. We reverse and remand.
Statement of Facts and Procedural History[2]
Stephen and Karla were married on August 26, 1989. The parties separated on or about June 30, 2012. A petition for dissolution was filed and a trial was held. On March 13, 2014, the court entered its Amended Findings of Fact, Conclusions of Law, and Judgment and Decree of Dissolution of Marriage.
At the time of trial on the original dissolution, spousal maintenance was the sole contested issue. The parties consented to a joint legal and joint physical custody parenting plan and agreed as to the amount of child support. The parties settled the issues regarding the division of property and debt through a Separation and Property Settlement Agreement which was found to be fair and not unconscionable and was ordered by the dissolution court.[3] As relevant to the issues currently before this court, at the time of the dissolution Stephen was retired from the United States Navy and his military pension was "matured," meaning he was currently receiving monthly pension benefits. The property settlement agreement and the subsequent judgment provided that each party would receive one half of the monthly military pension payments.[4]
The parties jointly offered two exhibits in the original dissolution setting forth Stephen's gross income at the time of the dissolution to be $9,582.66 per month, which included his salary from his current employment with the Veterans Administration and his monthly military pension benefits from his Navy service. The dissolution court found his net income for purposes of determining if he had the ability to pay maintenance, to be $7,247.79 per month. The dissolution court found Karla's reasonable needs to be $4,105.00 per month. The dissolution court did not impute any income to Karla based on various factors and found that she had no income at that time but would have income equal to her share of the monthly pension benefit after the dissolution.[5]
The dissolution judgment provided for Stephen to pay Karla modifiable maintenance in the amount of $4,450.00 per month, which after payment of her tax burden, the court found sufficient to meet her reasonable needs. The dissolution judgment further provided for an automatic reduction of that maintenance obligation *715 to the amount of $2,850.00 per month beginning on the month following Karla receiving the monthly payments based on her portion of Stephen's military pension, which the court determined would be in the amount of $1,600.00.[6] The military pension benefits were considered monthly income to each of the parties for the purposes of determining maintenance. Neither party appealed the judgment of dissolution.
Less than one year after the dissolution judgment, in December of 2014, Stephen filed his first Motion to Modify the Dissolution Judgment, which was consented to by Karla. The Motion to Modify only addressed issues dealing with custody and visitation. The modification action was settled and the parties agreed that neither party would pay child support to the other. On February 2, 2015, the court entered a Judgment and Order Modifying Decree of Dissolution. The court found in that judgment that as of July 2014, Karla began receiving the monthly benefits that she was entitled to from Stephen's military pension and that pursuant to the original dissolution judgment the maintenance obligation was automatically reduced to the sum of $2,850.00 as of August 2014. The court found that the change in the maintenance amount was "not a modification as to the maintenance, but rather that a requirement in reduction of the maintenance payment has occurred." The court did not recalculate the income and expenses of the parties in the modification judgment in regards to the maintenance obligation. This judgment of modification was not appealed by either party.
Slightly over one year later, on March 25, 2016, Stephen filed a Motion to Modify Decree of Dissolution for Reduction of Maintenance, which was later amended. Stephen alleged that a substantial and continuing change in circumstances had occurred since the time of the original judgment in that: (1) Karla had sufficient opportunity to gain employment; (2) Karla's home constituted an unreasonable expense that was not a reasonable need; and (3) the children of the parties no longer resided with Karla.
A trial was held on July 18, 2017, and the trial court issued a Judgment and Decree of Modification of Maintenance on September 28, 2017.[7] At trial Karla testified that she did not believe that she had any mental health problems and she had stopped seeing her mental health provider due to that belief. Karla also testified that she had not obtained employment since the dissolution and she had done nothing to obtain employment or job training. Karla testified that she had a depressed mood, trouble with her daily activities, anxiety, fear of socialization, and anxiety when driving or leaving her house.
The trial court found Karla's testimony to be contradictory and her evidence insufficient to establish an inability to be employed. The trial court found that Karla was capable of gainful employment and had made no good faith effort since the time of the dissolution to obtain employment. The trial court found that "[Karla's] failure to make a good faith effort at obtaining self-sufficiency constitutes a substantial and continuing change in the circumstances since the time of the Judgment *716 that makes the original Judgment unreasonable." Following this finding, the trial court recalculated the maintenance award. The court imputed income to Karla for 40 hours per week at minimum wage, for a monthly income total of $1,335.00.[8] The trial court also found that Karla had the ability to earn approximately $446.00 per month in net investment income based on over $200,000.00 in cash that she had in a bank account.[9] None of these findings are challenged on appeal.
The trial court further found that Karla received pension income from Stephen's military retirement in the amount $1,730.00 per month but the trial court did not "find that this pension payment is income for purpose of determining maintenance." Although not raised or argued by either party, the trial court in its judgment cited to Lindo v. Higginbotham , 517 S.W.3d 558 (Mo. App. E.D. 2016) for the proposition that "the reduction of maintenance, dollar for dollar in the amount of the pension benefit, has the effect of impermissibly amending the division of marital property."[10] The trial court found Karla's reasonable needs to be $3,685.00 per month. The trial court ordered that spousal maintenance due from Stephen to Karla should be reduced to $1,960.00 per month.
Karla's Income and Expense Statement that was received into evidence at trial showed her gross monthly income from all sources as $4,500.00 per month. She included in her monthly income the $1,650.00 monthly payment from the military pension and $2,850.00 in monthly maintenance she was receiving at that time. Clearly it was her position at trial that the court should consider her portion of the pension benefits as income for purposes of determining her ability to meet her reasonable needs.
The judgment provided Karla with a monthly income of $3,741.00 without consideration of the monthly pension benefit of $1,730.00. The court found her reasonable needs to be $3,685.00 per month. If the pension benefits are considered as income, her monthly income, including the maintenance award, would exceed her reasonable needs by $1,786.00 per month.
Stephen's Income and Expense Statement that was received at trial showed a gross monthly income from all sources as $8,988.00 and this amount included the portion of the military pension benefit that he was receiving each month. He showed a net monthly income of $5,940.00, which also included the pension benefits. The trial court found that based on his income he had the ability to pay maintenance. His ability to pay maintenance is not challenged on appeal.
This timely appeal followed. Stephen raises two points on appeal but the central issue in both is whether the trial court *717 erred in failing to consider the monthly benefits Karla received from the military pension in calculating her ability to meet her own reasonable needs.
Standard of Review
Because this is a court tried case, "the judgment of the trial court will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." Blue Ridge Bank & Trust Co. v. Trosen (Trosen II) , 309 S.W.3d 812, 815 (Mo. App. W.D. 2010) (quoting McNabb v. Barrett , 257 S.W.3d 166, 169 (Mo. App. W.D. 2008) ). "We view the evidence, and permissible inferences therefrom, in the light most favorable to the trial court's judgment, and we disregard all contrary evidence and inferences." Id. (quoting Brown v. Mickelson , 220 S.W.3d 442, 447 (Mo. App. W.D. 2007) ). "We defer to the trial court's factual findings, giving due regard to the trial court's opportunity to judge the credibility of the witnesses." Id. (quoting Brown , 220 S.W.3d at 447 ).
Jaco v. Jaco , 516 S.W.3d 429, 432 (Mo. App. W.D. 2017).
The trial court has broad discretion in awarding maintenance, and its decision will not be overturned absent an abuse of discretion. To determine whether the trial court abused its discretion, this court reviews the evidence in a light favorable to the decree, disregarding any evidence to the contrary and deferring to the trial court's judgment even if the evidence could support a different conclusion.
Hammer v. Hammer , 139 S.W.3d 239, 240 (Mo. App. W.D. 2004) (internal citations omitted) (citing Stangeland v. Stangeland , 33 S.W.3d 696, 700 (Mo. App. W.D. 2000) ).
In reviewing a judgment modifying maintenance we must determine if the judgment is supported by substantial evidence, is against the weight of the evidence or erroneously declares or applies the law. Serot v. Serot, 536 S.W.3d 771, 778 (Mo. App. E.D. 2017). The party seeking to modify a maintenance award must first show, through detailed evidence and considering all financial resources of both parties, a change in circumstances so substantial and continuing as to make the terms of the prior judgment unreasonable. Id.
Analysis
Stephen raises two points on appeal. In his first point on appeal, Stephen argues that the trial court erred in ordering $1,960.00 of modifiable spousal maintenance because by failing to continue to consider Karla's $1,730.00 monthly payment from her portion of the marital military pension as income, the trial court misapplied the law. In his second point on appeal, Stephen argues that the trial court erred in ordering $1,960.00 of modifiable spousal maintenance because by failing to include Karla's $1,730.00 monthly payment from Karla's portion of the marital military retirement pension as income, the trial court misapplied the law by excluding a readily available source of income.
Point One
In Stephen's first point on appeal he argues that the trial court erred by not considering Karla's $1,730 monthly payment from her portion of the marital military retirement pension as income. Stephen argues that the trial court's reliance on Lindo v. Higginbotham was misapplied since Karla's $1,730 monthly income from her portion of the marital military pension was already included as income for purposes of determining maintenance in the original dissolution judgment, and by not including the pension income the trial court was altering the prior marital property division.
*718 Stephen's motion to modify the court's prior judgment regarding maintenance is governed by section 452.370[11] . That section provides that "the provisions of any judgment respecting maintenance or support may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." Section 452.370.1. "[I]n determining whether or not a substantial change in circumstances has occurred, [the court] shall consider all financial resources of both parties[.]" Id. Here, the trial court determined that Karla's failure to make a good faith effort to obtain self-sufficiency constituted a substantial and continuing change in circumstances, which justified a modification of the maintenance award. This finding is not disputed on appeal.
Once the trial court has found that the requisite change in circumstances has been shown, the court must then determine if maintenance should be terminated or determine the appropriate amount of maintenance to award. To be entitled to continued maintenance, the trial court must first determine, as relevant to this case, that the spouse seeking maintenance:
(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and
(2) Is unable to support himself through appropriate employment[.]
Section 452.335.1(1)-(2). "In determining the amount to award for maintenance in a modification proceeding under § 452.370, the trial court may, but is not required to, consider the factors found in § 452.335, just as if the trial court was determining an original maintenance award." Kunce v. Kunce, 459 S.W.3d 443, 450 (Mo. App. W.D. 2015) (quoting Brooks v. Brooks , 957 S.W.2d 783, 786 (Mo. App. W.D. 1997) ). Those factors are:
(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
(3) The comparative earning capacity of each spouse;
(4) The standard of living established during the marriage;
(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;
(6) The duration of the marriage;
(7) The age, and the physical and emotional condition of the spouse seeking maintenance;
(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;
(9) The conduct of the parties during the marriage; and
(10) Any other relevant factors.
Section 452.335.
The determination of how to treat pension payments for purposes of a maintenance award creates a tension between the mandate pursuant to section 452.370.1 that the court consider "all financial resources of both parties ..." with the proposition that, "a spouse is not required to consume his or her apportioned share of marital property in order to be entitled to *719 an award of maintenance." Lindo , 517 S.W.3d at 563. "Nor is a spouse required to consume an apportioned share of marital property in order to be entitled to retain an award of maintenance." Id.
The value of the future benefits which will be received from a pension plan may be reduced to its present value and the present value of the marital portion of the future payout from the pension plan may be awarded to one party with other assets of equal value being awarded to the other party. See Landewee v. Landewee, 515 S.W.3d 691, 697 (Mo. banc 2017). When the future payments from the marital portion of a pension plan have been awarded to one of the party's in the calculation of the division of property, the future payments are then a part of that party's marital estate and should not be used in a modification to reduce maintenance on a dollar for dollar basis because to do so would constitute an amendment of the property division. Leslie v. Leslie , 827 S.W.2d 180, 182 (Mo. banc 1992). This would be true whether the pension payments are used to establish a party's ability to pay maintenance or are considered in determining a party's ability to meet his or her reasonable needs. To do so would effectively be forcing one party to consume an asset from the division of property in order to pay or receive maintenance as the value of those future payments was taken into account in the division of the marital property.
Stephen argues that the trial court misapplied the law by not continuing to include Karla's monthly pension benefit as income in the maintenance calculation because those payments were treated as income in the original dissolution judgment and not treating them as such in the modification changed the original dissolution court's division of property. Stephen argues that the court misapplied the holding in Lindo v. Higginbotham .
In Lindo , Higginbotham argued that because Lindo, post-dissolution, began to receive pension income due to his early retirement, this constituted a substantial change of circumstances sufficient to support a motion to modify a maintenance award. Id. at 564. The trial court denied Higginbotham's motion to modify because "[t]reating [Lindo's] current ability to receive monthly payments from these assets as a change of circumstances justifying a change in the maintenance payments would effectively amount to a modification of the division of property in the original dissolution action." Id. The Eastern District of this court agreed, stating that "[t]he reduction of maintenance, dollar for dollar in the amount of the pension benefit, has the effect of impermissibly amending the division of marital property." Id.
Lindo is distinguishable on several grounds. First, the receipt of pension benefits was not the basis for the trial court's finding that a change in circumstances had occurred in the case at bar. It was Karla's failure to use her best efforts to become self-supporting that the trial court found constituted the requisite change in circumstances justifying the modification of the maintenance award. Once the court determined that a modification of the maintenance award was justified, the court must then, pursuant to section 452.370.1, consider "all financial resources of both parties ..." in determining the modified amount of maintenance to be awarded. It was under this second step of the analysis that the court was required to consider the pension payments. Also, unlike Lindo where the pension income was not originally considered as monthly income and factored into the maintenance calculation, here the original maintenance calculation in the final judgment *720 of the dissolution court, included the pension income in the maintenance calculation. In this case the pension had matured and Stephen was currently receiving the monthly benefits at the time of the dissolution. Karla was going to begin receiving her share of that pension income as soon as the paperwork from the dissolution was processed through the pension plan. The property settlement agreement, which was incorporated into the judgment, did not provide for a value of the pension plan, but merely divided the monthly pension payments as income between the parties. The military retirement plan is a defined benefit plan[12] which a member of the Armed Forces who serves for a specified period of time is entitled to receive when they retire. Moore v. Moore, 484 S.W.3d 386, 389 (Mo. App. W.D. 2016).
The Uniformed Services Former Spouses' Protection Act [USFSPA] authorizes state courts to treat "disposable retired pay" as marital property. 10 U.S.C. § 1408(c)(1) (1988 & Supp. V 1993). Missouri considers military nondisability retirement benefits received for service during marriage as marital property. Moritz v. Moritz , 844 S.W.2d 109, 115 (Mo. App. 1992). The USFSPA defines "disposable retired pay" as "the total monthly retired pay to which a [military] member is entitled," minus certain deductions. 10 U.S.C. § 1408(a)(4).
Id. at 389-390
In this case, as was the case in Moore, the parties entered into a property settlement agreement which was incorporated into the dissolution judgment by reference. In the judgment the income that Stephen was currently receiving from the military pension was listed as income both for purposes of calculating his child support and maintenance obligations. The income that Karla was going to be receiving as soon as the paperwork from the dissolution was final and processed by the pension plan was used for determining her income for purposes of child support and for determining her ability to meet her reasonable needs regarding maintenance. The property settlement agreement and subsequently the final judgment did not place a total value on the military pension plan, but merely divided the monthly benefit payments equally between the parties. Neither party may collaterally attack the final dissolution judgment by arguing the income from the military pension was improperly treated for the calculation of maintenance in that judgment. Id. at 391-392. The trial court should consider the parties intentions when they reached a settlement on the division of property in the original dissolution. See Conrad-Neustadter v. Neustadter , 340 S.W.3d 660, 666 (Mo. App. W.D. 2011). Both parties treated the pension payments to each of the parties as income in the maintenance determination in the original dissolution and in presenting their evidence on the motion to modify that maintenance award. "Although the Missouri Supreme Court held that trial courts were not required to include or exclude income attributable to retirement and IRA accounts awarded as marital property in the calculation of maintenance *721 awards, it did require trial courts to 'consider' such income when calculating maintenance. [Hill v. Hill , 53 S.W.3d 114] at 116 [ (Mo. banc 2001) ]." Schubert v. Schubert, 366 S.W.3d 55, 65 (Mo. App. E.D. 2012). See also Tarneja v. Tarneja, 164 S.W.3d 555, 566 (Mo. App. S.D. 2005). "Because of the untold number of 'pension plans' which appear to have their own singular and unique requirements for meeting 'vesting' and 'maturing' provisions, it is imperative that trial courts be authorized to apply a flexible approach to accommodate the particular facts of each case." Landewee v. Landewee, 515 S.W.3d 691, 695 (Mo. banc 2017) (internal citations and quotation marks omitted).
Under these facts the modification court erroneously declared and applied the law when it sua sponte found that it could not legally consider the pension benefits as income to Karla in determining her ability to meet her reasonable needs. While the court was not required to give a dollar for dollar offset in the amount of maintenance it awarded based on the pension benefits she receives, the court was required to consider the pension benefits in determining the appropriate maintenance calculation in the modification judgment. Point One is granted.
Point Two
Based on our grant of Point One, we do not reach Point Two.
Conclusion
We reverse and remand for the trial court to recalculate the amount of maintenance, if any, to be paid from Stephen to Karla consistent with this opinion, to determine the appropriate effective date for the modified amount of maintenance and calculate any overpayment or underpayment which may have accrued during the relevant time period including the pendency of this appeal.
All concur

Because Stephen Richardson and Karla Richardson share the same surname, we refer to each by their first name for purposes of clarity. No familiarity or disrespect is intended.

In reviewing a judgment on a motion to modify decree of dissolution, "[w]e view the evidence, and permissible inferences therefrom, in the light most favorable to the trial court's judgment, and we disregard all contrary evidence and inferences." E.S.(K.)D. v. J.A.K. , 516 S.W.3d 847, 850 (Mo. App. W.D. 2017).

The Separation and Property Settlement Agreement from the original dissolution was incorporated by reference into the judgment.

The property settlement agreement shows that each party received some I.R.A., 401(k), thrift savings plan and other "retirement funds" but no evidence was adduced as to the value of these funds, when these funds would be available to either party or what income may be derived from these funds currently or in the future.

Those factors included that Karla was 46 years old at the time of dissolution, had not been employed outside the home for 22 years, did not have a college degree, had not participated in any educational endeavors for 18 years, and suffered from severe depression and anxiety which impaired her ability to work outside the home.

The dissolution court found that it would take several months for the paperwork to be filed and processed with the military pension plan, such that Karla would not receive the monthly benefits awarded to her from the pension until that process was completed.

Each of the three judgments entered over the course of this litigation was entered by a different trial judge.

To assist in meeting his or her reasonable needs following a dissolution, a party has an affirmative duty to seek employment. Greiner v. Greiner , 146 S.W.3d 442, 450 (Mo. App. W.D. 2004).

The majority of the cash in this account came from an inheritance that she received after the dissolution, which is nonmarital property but if invested could provide a source of income for her to support herself. Karla also testified that over $40,000.00 of this account was from money she had saved from the maintenance payments she had received since the dissolution judgment. The trial court found that the ability to save this significant amount of money established that the maintenance she was currently receiving exceeded her reasonable needs.

It is unclear from the judgment why the trial court found it was proper to consider the monthly benefits Stephen received from the military pension as his income but not consider the benefits Karla received from the same pension as her income in the calculation of the maintenance award.

All statutory references are to RSMo 2016 as supplemented unless otherwise indicated.

A defined benefit plan is a pension plan which pays a set benefit to all similarly situated employees based on age, years of employment and amount of the employee's salary. The benefits are paid from a fund supported by contributions from the employer and in some cases a predetermined contribution by the employees. Usually the employee's contribution is based on a percentage of the employees pay and the contribution is mandatory for all employees. Under these plans there is no separate pool of assets from which each individual's benefits are derived, but rather a large pool of assets which is accumulated and invested on behalf of all employees and from which a set monthly benefit is paid to each employee upon "vesting" and reaching "maturity".