

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| COUNTY OF BOONE, | ) | |
| | ) | |
| **Respondent,** | ) | |
| | ) | **WD82353** |
| v. | ) | |
| | ) | **OPINION FILED:** |
| | ) | **April 23, 2019** |
| SETH REYNOLDS, | ) | |
| | ) | |
| **Appellant.** | ) | |

### Appeal from the Circuit Court of Boone County, Missouri
### The Honorable Jodie C. Asel, Judge

### Before Special Division: Edward R. Ardini, Jr., Presiding Judge, and
### Mark D. Pfeiffer and Gary D. Witt, Judges

Mr. Seth Reynolds ("Reynolds") appeals from a civil contempt ruling of the Circuit Court of Boone County, Missouri ("circuit court"), due to his failure to comply with the requirements of a judgment of permanent injunction against him entered May 18, 2017, which called for the removal of a building, fence, and satellite dish "all in violation of plaintiff Boone County's Ordinances and which all unlawfully encroach on the 25-foot setback area established by the Boone County Zoning Regulations and upon [Boone County's] right of way abutting North Creasy Springs Road in front of [Reynolds's] property." Reynolds raises three points on appeal, the first two arguing that the contempt ruling, which concluded that Reynolds was presently able

to purge his contempt, was not supported by substantial evidence or, alternatively, was against the weight of the evidence. In his third point on appeal, Reynolds argues that the circuit court's denial of his Rule 74.06[1] motion to correct the May 18, 2017 judgment was an erroneous application of the law. We affirm.

**Factual and Procedural Background[2]**

Sometime before June 21, 2013, without first obtaining a building permit, Reynolds began construction on a detached accessory building, near his home on Creasy Springs Road in Boone County, Missouri. The accessory building sat approximately eighteen to twenty feet off the edge of the paved road. After he had installed the footings and piers for the structure, his builders expressed concern about the location of a nearby power line and its potential interference with continued construction. Consequently, Reynolds contacted Boone Electric to see about having the power line relocated. When a representative from Boone Electric showed up, he advised Reynolds that, in order to obtain a permit to relocate the power line, Reynolds first needed a building permit for the accessory building. Accordingly, Reynolds contacted representatives of the County of Boone ("County") and requested and received a building permit.

Four days after Reynolds received the building permit, Mr. Uriah Mach, a land-use planner for County, sent Reynolds an email, advising Reynolds that the accessory building was located too close to Creasy Springs Road and that Reynolds would need to apply to the Board of Adjustment for a variance before proceeding any further. The structure both encroached on the

---

[1] All rule references are to I MISSOURI COURT RULES – STATE (2018).

[2] "We view the evidence and the reasonable inferences that may be drawn therefrom in the light most favorable to the judgment, disregarding evidence and inferences to the contrary." *Stander v. Szabados*, 407 S.W.3d 73, 78 (Mo. App. W.D. 2013). Portions of the facts are quoted from the opinion in Reynolds's appeal of the May 18, 2017 judgment entering a permanent injunction in favor of County, *County of Boone v. Reynolds*, 549 S.W.3d 24 (Mo. App. W.D. 2018), without further attribution.

2

public right-of-way for Creasy Springs Road and violated the twenty-five-foot building setback requirement under zoning regulations.[3]

After not hearing back from Reynolds, Mach followed up the email with two letters, dated July 9, 2013, and July 24, 2013. In both letters, Mach repeated the warnings contained in his previous email to Reynolds. Reynolds ignored the letters and the corresponding warnings contained therein and proceeded with the completion of the accessory building.

*After* completion of his building project, sometime in 2015, Reynolds finally applied for a variance for the setback violations with the Board of Adjustment. The Board unanimously declined Reynolds's request. Thereafter, County demanded that Reynolds take action to bring his property into compliance with both the right-of-way and the zoning regulations, but Reynolds refused. County then filed a petition for permanent injunction against Reynolds, alleging that Reynolds's property "denied [County] the access to th[e] right-of-way . . . , together with the land-use authority statutorily granted to [County] to establish, promulgate, and enforce zoning regulations, thereby causing [County] irreparable harm," and that Reynolds's actions were "perpetual, and so [County] has no adequate remedy at law." County sought a permanent injunction, "mandating that [Reynolds] comply with Boone County, Missouri zoning regulations, and that he remove the accessory building, the fence, and the satellite dish from . . . the right of way area, . . . the setback area, . . . [and] the area in front of the main building."

At trial, the circuit court received testimony from Reynolds, Mach, and a surveyor describing the location of the right-of-way boundaries, the setback boundary, and the location of Reynold's physical structures in violation of County's zoning regulations and right-of-way. After hearing the evidence, the circuit court found that

---

[3] At trial, Reynolds stipulated that his garage, satellite dish, and privacy fence were all in violation of various zoning regulations and encroached on County's right-of-way for Creasy Springs Road.

> [Reynolds] has unlawfully constructed and maintains on his property an unlawful accessory building abutting North Creasy Springs Road, together with a fence and a satellite television receiver dish between that building and North Creasy Springs Road, all in violation of plaintiff Boone County's Ordinances and which all unlawfully encroach on the 25-foot setback area established by the Boone County Zoning Regulations and upon the Plaintiff's right of way abutting North Creasy Springs Road in front of that property.

The circuit court issued its judgment entering a permanent injunction ("Injunction Judgment") on May 18, 2017, requiring Reynolds to:

> remove in its entirety that building, that fence, and that satellite receiver dish from the Boone County setback area and Boone County's North Creasy Springs Road Right of Way within 60 days of the date of th[e] Judgment and . . . permanently restrained and enjoined [Reynolds] from building or maintaining any structures in that setback area or in that right of way in the future.

Reynolds appealed, this Court affirmed the Injunction Judgment in April of 2018, and the Missouri Supreme Court denied transfer on July 3, 2018.

Thereafter, County filed a motion for contempt because Reynolds refused to remove the physical structures that were ordered to be removed by the Injunction Judgment. The first hearing on County's motion for contempt was held September 17, 2018, and Reynolds testified as to his efforts to comply with the Injunction Judgment. Reynolds claimed that he made numerous phone calls to get demolition bids, but only one responded with a bid and Reynolds claimed that the demolition bid was almost as much as he had spent on building the structures in question and, aside from the exorbitant expense, they would not be able to begin any demolition work for approximately six months. After hearing Reynolds's representations, the circuit court stated it was

> hearing and seeing . . . very little effort on the defendant's part in pursuing the demolition of the building. . . .
> . . . .
> I'm not hearing . . . that he's doing anything to try to accomplish this other than making a few phone calls and getting what he acknowledges is an unrealistic bid financially for himself and unrealistically proposed start date wise as far as the

4

plaintiff goes and as far as it complies with the judgment that was entered in the case.

The circuit court then found Reynolds failed to comply with the judgment and was thus in contempt, but instead of sanctioning Reynolds at that time, the circuit court continued the matter to October 15, 2018, allowing Reynolds additional time to purge himself of his contempt.

At the October 15 hearing, Reynolds appeared and indicated that he had made additional phone calls to different entities but could not produce a single demolition bid to the circuit court. And, although Reynolds admitted that he paid cash of $30,000 to build the structures violating the Injunction Judgment, Reynolds also represented to the circuit court—*a representation he later admitted was **false***—that he was presently in a financially precarious position because he owed monthly mortgage payments of $1,100 on his home to a bank. Hearing of this financial strain, the circuit court again set the cause over to November 12, 2018, for further consideration, to allow yet more time for Reynolds to explore alternative options to come into compliance with the judgment, in a further attempt to avoid having to impose contempt sanctions.

At the November 2018 hearing, it was evident that Reynolds had falsely represented to the circuit court in October 2018 that his real property—which Reynolds valued at $174,499—was subject to a mortgage. Instead of throwing himself at the mercy of the circuit court for his blatant misrepresentations to the circuit court, Reynolds first *criticized* the scope of the building removal ruling in the Injunction Judgment via a purported "motion to correct" the Injunction Judgment pursuant to Rule 74.06. Then, Reynolds claimed he had acted in good faith towards purging himself of contempt since the October 2018 hearing by running a four-day classified advertisement in the newspaper for demolition proposals and "listing" his real property for sale on a national website (*i.e.,* Zillow.com). It is clear from the record that the circuit court was not amused with Reynolds's previous false representations about his financial wherewithal to purge

5

himself of contempt nor his lack of credible attempts to remove the offending physical structures on his real property. The circuit court denied Reynolds's "motion to correct" the Injunction Judgment, finding the motion to be an improper collateral attack on the Injunction Judgment; then, the circuit court gave Reynolds one last chance to purge himself of contempt, the failing of which would result in contempt sanctions, including jail time. The circuit court set the cause over for a status contempt hearing on December 3, 2018.

On December 3, 2018, Reynolds represented that "he's done about everything that he's able to do to try to get this building removed" but that he could not afford it and simply did not possess the financial means to purge himself of contempt. The circuit court disagreed, noting that Reynolds's testimony was both lacking in credibility and candor and that he admittedly possessed real property that he valued at $174,499 which was unencumbered by any mortgage obligation. Hence, since the circuit court concluded that Reynolds possessed the financial wherewithal to purge himself of contempt and had patiently given Reynolds approximately four months to do so, and Reynolds's only response was to "willfully disobey" the Injunction Judgment, the circuit court entered its Judgment of Civil Contempt of Court and Order of Commitment thereby ordering Reynolds to be jailed with conditions that would permit his release upon Reynolds making the credible effort to purge himself of contempt.

Reynolds appeals.

**Standard of Review**

Our review of a court-tried case is governed by the standard set forth in *Murphy v. Carron*, and the judgment will not be set aside "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." 536 S.W.2d 30, 32 (Mo. banc 1976).

6

"The circuit court's judgment in a civil contempt proceeding will not be disturbed absent a clear abuse of discretion[,] . . . [which] occurs when the ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Walker v. Lonsinger*, 461 S.W.3d 871, 875 (Mo. App. W.D. 2015) (internal quotation marks omitted). "If reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Ream-Nelson v. Nelson*, 333 S.W.3d 22, 28 (Mo. App. W.D. 2010) (internal quotation marks omitted).

With regard to Reynolds's sufficiency of the evidence challenge on appeal, "[s]ubstantial evidence is evidence that, if believed, has some probative force on each fact that is necessary to sustain the circuit court's judgment." *Ivie v. Smith*, 439 S.W.3d 189, 199 (Mo. banc 2014). "Evidence has probative force if it has any tendency to make a material fact more or less likely." *Id.*

With regard to Reynolds's against-the-weight-of-the-evidence challenge on appeal, "[a]ppellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Murphy*, 536 S.W.2d at 32. "[A] claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment." *Ivie*, 439 S.W.3d at 205 (internal quotation marks omitted). Put another way, the weight of the evidence "denotes an appellate test of how much persuasive value evidence has, not just whether sufficient evidence exists that tends to prove a necessary fact." *Id.* at 206. "A circuit court's judgment is against the weight of the evidence only if the circuit court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment."

*Id.* "When the evidence poses two reasonable but different conclusions, appellate courts must defer to the circuit court's assessment of that evidence." *Id.*

Finally, as to Reynolds's claim of error relating to the trial court's denial of his Rule 74.06 motion, "[b]ecause relief under Rule 74.06 involves setting aside a judgment on the merits, it requires the highest scrutiny, giving effect to the interests in stability of final judgments and precedent." *Vang v. Barney*, 480 S.W.3d 473, 475 (Mo. App. W.D. 2016) (internal quotation marks omitted). "Thus the trial court is afforded broad discretion when acting on a Rule 74.06 motion, and the appellate court should not interfere unless the record convincingly shows an abuse of discretion." *Id.* (internal quotation marks omitted). Such abuse of discretion may only be found where the trial court's decision "is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* (internal quotation marks omitted). If reasonable people may differ in opinion regarding the propriety of the trial court's ruling, there is no abuse of discretion. *Id.*

## Analysis

In his first two points on appeal, Reynolds claims the trial court erred in entering a judgment of contempt and ordering his incarceration upon finding he had the present ability to purge himself of the contempt because there was no substantial evidence to support the finding or, alternatively, the finding was against the weight of the evidence. We disagree.

To meet its burden to establish a *prima facie* showing of civil contempt, County, as the complaining party, was required to show (1) Reynolds's obligation to perform an action as required by the court's judgment, and (2) his failure to meet the obligation. *Magruder v. Pauley*, 411 S.W.3d 323, 335 (Mo. App. W.D. 2013). Here, it is undisputed that Reynolds did not, by

December 3, 2018, "remove in its entirety that building, that fence, and that satellite receiver dish from the Boone County setback area and Boone County's North Creasy Springs Road Right of Way[.]" Thus, County established a *prima facie* case.

Once a *prima facie* case has been proven, "[t]he alleged contemnor then has the burden of proving that person's failure to act was not due to [his] own intentional and contumacious conduct." *Walker*, 461 S.W.3d at 875 (internal quotation marks omitted).

Here, it is telling that Reynolds's basis for claiming he was not financially equipped to purge his contempt and pay for the removal of the offending physical structures was his **_lie_** to the circuit court that he already had an existing mortgage that was eating up the bulk of his monthly financial living allowances. In **_fact_**, Reynolds later admitted to the circuit court that his real property had a value of $174,499 and there was **_no mortgage_** on this real property and Reynolds's principal evidence of rejected financing inquiries was his testimonial representations to the circuit court, not a stack of rejection letters from lending institutions. Having **_lied_** to the circuit court previously on this topic, the circuit court found Reynolds's testimony about his financial wherewithal to purge contempt to be lacking in credibility.

The remainder of Reynolds's testimony was that he had made "phone calls" to various businesses and "got the word out" to local hardware store vendors and placed "classified ads" seeking demolition services to demolish his accessory building but the ones that "had insurance" were priced higher than he was willing to pay and the more reasonably priced bids (though he never testified to the amount of those bids) were "uninsured" and that was unacceptable to Reynolds—though, of course, Reynolds offered no testimony about the cost to obtain the relevant insurance policy that he deemed a deal breaker in his investigation of demolition companies; and, he offered no explanation for why he found it reasonable to hire Amish workers

9

to erect his accessory building, without insurance, but then would not consider engaging the same Amish group about removal of the accessory building because they were uninsured. Then, instead of hiring a realtor familiar with the local real estate market, Reynolds's last ditch alleged effort to purge himself of contempt was to list his home for sale by owner on a national internet site, Zillow.com. Finally, the circuit court also knew the undisputed history from 2013 that, *after* being notified of zoning irregularities in Reynolds's construction project *before* the project was complete, Reynolds *ignored* warnings from County about his project and proceeded to pay $30,000 cash to complete construction of his accessory building—a building that Reynolds has succeeded in keeping intact for now almost six years after he was first notified of the setback violations that led to the Injunction Judgment.

Simply put, it is no coincidence that the circuit court found Reynolds to be utterly lacking in credibility and candor with the circuit court on the topic of his financial ability to purge contempt and the evidence before the circuit court supported the circuit court's conclusion that Reynolds "continues to willfully and contumaciously fail and refuse to comply with the terms of [the Injunction Judgment]." Further, substantial evidence supported the circuit court's conclusion that Reynolds "has the present ability to purge himself of his contempt by removing in their entirety the building, the fence, and the satellite dish." In so finding, the circuit court noted that Reynolds admitted he owned real property having a value of $174,499, it was not subject to a mortgage, and he was not making payments on it.

The circuit court's Judgment of Civil Contempt of Court and Order of Commitment was supported by substantial evidence and, similarly, it cannot be said based on this record that "the circuit court could not have reasonably found, from the record at [the contempt proceedings], the existence of a fact that is necessary to sustain the judgment[,]" specifically, that Reynolds failed

10

to meet his "burden of proving that person's failure to act was not due to [his] own intentional and contumacious conduct." *Ivie*, 439 S.W.3d at 206; *Walker*, 461 S.W.3d at 875 (internal quotation marks omitted). Therefore, the circuit court's contempt ruling likewise was not against the weight of the evidence.

Points I and II are denied.

Finally, in Point III, Reynolds asserts the trial court erred in denying his Rule 74.06 motion relating to the *Injunction Judgment*, a judgment that had already become final and to which final mandate had previously been issued by this Court.

Though Reynolds couches his claim of error as one involving a mistake of law in the *present* contempt proceeding, the crux of his argument is that he alleges the trial court made a mistake of law in the *Injunction Judgment* by ordering the removal of the entire building rather than just the portion he presently alleges encroached into the right-of-way or zoning setback area. "In reality, then, [Reynolds] is collaterally attacking the [Injunction Judgment], which has become a final judgment, by asserting that the [Injunction Judgment] contains a mistake of law . . . ." *Moore v. Moore*, 484 S.W.3d 386, 389 (Mo. App. W.D. 2016).

Simply put, Reynolds's present claim is based on evidence from the record from the trial that led to the Injunction Judgment and is a claim that was not raised in Reynolds's appeal of that judgment. "Where the court has jurisdiction over the parties and the subject matter, however, the judgment rendered, unless reversed or annulled in some proper proceeding, is not open to contradiction or impeachment in respect to its validity or binding effect in any collateral proceeding." *Timmons v. Timmons*, 139 S.W.3d 625, 629 (Mo. App. W.D. 2004) (internal quotation marks omitted). "A collateral attack is an attempt to impeach a judgment in a proceeding not instituted for the express purpose of annulling the judgment." *Id.* (internal

11

quotation marks omitted). "The contempt proceeding was instituted for the express purpose of enforcing the judgment, not annulling it." *Id.* Here, because Reynolds's claim "did not implicate personal or subject matter jurisdiction," Reynolds's reliance on this alleged error in his motion brought in fighting the contempt proceeding against him "amounted to an impermissible collateral attack on the [original] judgment." *Id.*

Furthermore, "[n]othing is better settled than the principle that an erroneous judgment has the same *res judicata* effect as a correct one." *Moore*, 484 S.W.3d at 391 (internal quotation marks omitted). "In brief, *res judicata* bars the same parties from re-litigating the same cause of action that has been previously adjudicated by a final judgment on the merits, or from later raising a claim stemming from the same set of facts that should have been raised in the first suit." *Id.* (internal quotation marks omitted). Thus, even were we to conclude that the circuit court erred in its calling for the removal of the entire building in its original judgment (which we do not so conclude, nor indulge in analyzing *ex gratia*), "any such error would have been one of law[,]" and Reynolds "may not now attempt to impeach the [Injunction Judgment] nor resurrect the issue of [what portion of the property was in violation of zoning laws] under the guise of arguing that the issue is 'new' to the parties in the subject contempt proceeding." *Id.* at 391-92. "It is not a 'new' issue and, to the extent that [Reynolds] had complaints about the alleged mistake of law declared in the [Injunction Judgment], his recourse was to directly appeal the [Injunction Judgment]." *Id.* at 392. "Rule 74.06 is not intended as an alternative to a timely appeal." *State ex rel. Mo.-Neb. Express, Inc. v. Jackson*, 876 S.W.2d 730, 733 (Mo. App. W.D. 1994). Because Reynolds did not directly appeal this particular issue, "even an alleged erroneous [judgment] has the same *res judicata* effect as a correct one, and it was certainly not

error for the trial court to enforce the [Injunction Judgment] in the present proceeding." *Moore*, 484 S.W.3d at 392 (citation omitted) (internal quotation marks omitted).

Point III is denied.

## Conclusion

Substantial evidence exists in the record to support the trial court's finding that Reynolds possesses the present financial ability to comply with the Injunction Judgment and purge himself of contempt thereof, and such finding was not against the weight of the evidence. Reynolds's final argument on appeal is an impermissible collateral attack on the Injunction Judgment and is barred by the doctrine of *res judicata*. The circuit court's Judgment of Contempt is affirmed.

/s/ *Mark D. Pfeiffer*

Mark D. Pfeiffer, Judge

Edward R. Ardini, Jr., Presiding Judge, and Gary D. Witt, Judge, concur.